Robert F. Babcock (#0158)
Joshua J. Sundloff (#14803)
**BABCOCK, SCOTT & BABCOCK**
Washington Federal Plaza
505 East 200 South, Suite 300
Salt Lake City, Utah 84102
Telephone: (801) 531-7000
Facsimile: (801) 531-7060
bob@babcockscott.com
josh@babcockscott.com

*Attorneys for Matrix Service Inc.*

_____

### IN THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| MATRIX SERVICE INC., an Oklahoma corporation, <br><br> Plaintiff, <br><br> v. <br><br> KENNECOTT UTAH COPPER, LLC, a Utah Limited Liability Company. <br><br> Defendant. | **COMPLAINT** <br><br><br> Case No. <br><br> Judge: |

Plaintiff, Matrix Service, Inc., complains against Defendant, Kennecott Utah Copper, LLC, and asserts the following in support of its claim.

### PARTIES AND JURISDICTION

1. Matrix Service Inc. (Matrix) is an Oklahoma corporation with its principal place of business in Tulsa County, Oklahoma.

2. Kennecott Utah Copper (Kennecott) is a Utah Limited Liability Company with its principal place of business in Salt Lake County, Utah.

3. This Court has subject matter jurisdiction under 28 USC § 1332 because this lawsuit is between citizens of different states and the amount in controversy exceeds $75,000.

4. Kennecott is subject to the personal jurisdiction of this Court.

5. Venue is proper in this Court under 28 USC § 1391.

## GENERAL ALLEGATIONS

6. In October 2012, Matrix entered into a contract (Contract) with Kennecott to perform work on the Copperton Concentrator, Rougher Flotation Expansion Phase 1, Miscellaneous Steel, Mechanical, Piping, Instrumentation, and Electrical Work Package FK04, at the Cornerstone Project (Project) in Salt Lake County, Utah.

7. The Contract provided that Matrix would provide labor, services, material, and equipment to the Project.

8. Kennecott agreed to pay Matrix for its labor, services, and material "consisting of the Contractor's Cost of the Work plus The Fixed Fee."

9. The Contract price was not a "lump sum" amount.

10. The Contract did not provide for a "guaranteed maximum price."

11. The initial "Estimated Cost of the Work" in the Contract was $15,024,930.

12. At Kennecott's request, Matrix generated the initial Estimated Cost of the Work in the Contract several months before Fluor, one of Kennecott's consultants, prepared the Project's final design drawings.

13. There were many differences in the work in the Project as contemplated in the initial Estimated Cost of the Work and the final design drawings.

14. Matrix supplied labor, services, material, and equipment and otherwise performed work in accordance with the requirements of the Contract.

15. Matrix used its best skill and attention to perform the work under the difficult conditions that existed on the Project.

16. The work proceeded slower and less efficiently than Matrix and Kennecott anticipated.

17. The slow and inefficient pace of work was caused by many factors including, but not limited to:

    (a)    Fluor did not complete the design drawings for the Project on time.

    (b)    Fluor's untimely completion of the design drawings delayed and caused inefficiencies in Matrix's work.

    (c)    Kennecott hired Sure Steel to complete the structure where Matrix would perform its work, and Sure Steel did not complete its scope of work on time.

    (d)    Sure Steel's failure to complete the structure on time delayed Matrix's work and made Matrix's work less efficient.

    (e)    Sure Steel had not installed the roof of the building when Kennecott terminated Matrix.

    (f)    Because the roof was not installed, Matrix's work was adversely impacted by weather conditions including dealing with snow in its work area.

    (g)    Sure Steel did not timely complete pipe racks onto which Matrix was supposed to install pipe.

    (h)    Because Sure Steel did not complete the pipe racks on time, Matrix had to change the sequence of their work to a less efficient method of installing the pipe on the pipe racks.

    (i)    Sure Steel installed structural supports for exterior piping at the incorrect elevation twice before it installed the supports at the correct elevation.

    (j)    Sure Steel's incorrect installation of these structural supports for the

exterior piping delayed Matrix's work and made it less efficient.

(k) Kennecott did not install the overhead crane according to the Project schedule.

(l) Kennecott's delay in installing the overhead crane caused Matrix to use alternative methods of moving material and equipment into the structure.

(m) The alternative methods Matrix had to use in lieu of the overhead crane were less efficient in moving the material and equipment into and around the structure.

(n) Kennecott did not timely provide equipment for Matrix to install on the Project.

(o) Kennecott did not provide equipment with connections that would fit as contemplated in the design drawings. Among other problems were misalignment of the fit-up connections for the Outotec tanks which took weeks to resolve causing delays and inefficiencies in many activities in Matrix's work.

(p) Kennecott's failure to provide equipment with connections that would fit according to the drawings caused Matrix to spend extra time and effort to address the problem on the Project site.

(q) Kennecott provided some large-bore pipes to the project for Matrix to install which had the incorrect sweep and would not fit as designed.

(r) The incorrect large-bore pipes caused delay to Matrix's work.

(s) Kennecott provided some prefabricated pipe spools for use in the air handling portion of the Project that Matrix was to install which were not fabricated to the correct angle causing the spools to not fit as designed.

(t) The incorrectly prefabricated pipe spools for the air handling portion of the

project caused delays and inefficiencies to Matrix's work.

(u) Kennecott provided some pipe to the Project with paint in the pipes' grooves that was too thick which Matrix had to remove.

(v) The extra work Matrix had to perform to remove the paint from the pipes diminished Matrix's productivity on the Project.

(w) Kennecott did not place anchor bolts in the concrete where equipment would be installed which required Matrix to drill holes for anchor bolts and epoxy the anchor bolts into the concrete.

(x) The extra work Matrix had to perform on the anchor bolts diminished Matrix's productivity on the Project.

(y) Kennecott provided nozzles for Matrix to install in the air compressor storage tanks which had been misfabricated.

(z) The misfabricated nozzles caused delay and inefficiencies to Matrix's work.

(aa) Kennecott did not provide materials to the Project on time.

(bb) Kennecott's failure to provide materials to the Project on time diminished Matrix's productivity.

(cc) Kennecott failed to properly inventory and manage the material on site.

(dd) Kennecott's failure to properly inventory and manage the on-site material impeded the work and productivity of Matrix.

(ee) Kennecott made changes to Matrix's scope of the work during the course of the work.

(ff) Even as late as just prior to Matrix's termination for convenience, Kennecott determined that an entire new cable tray had to be installed in the building to handle all electrical wiring required for the Project.

(gg) Kennecott failed to timely respond to Requests for Information which

adversely impacted the work of Matrix.

18. Matrix worked on the Project until April 5, 2013 when Kennecott terminated Matrix for its own convenience under paragraph 34.1 of the General Conditions of the Contract.

19. Kennecott did not terminate Matrix for cause under paragraph 35 of the General Conditions of the Contract.

20. As part of the Quality Assurance and Quality Control process, Matrix compiled and turned over the required documentation to Kennecott after the termination for convenience; Kennecott's representatives told Matrix that the documentation was the best ever seen and very well organized.

21. Soon after the termination for convenience, the Mining Safety and Health Administration conducted a two-day safety audit of Matrix and reported to Matrix that its record keeping was some of the best they had seen.

22. Kennecott requested that Matrix pay all of Matrix's subcontractors and suppliers that worked on the project.

23. Acting in good faith that it would be paid by Kennecott, Matrix paid its subcontractors and suppliers that worked on the Project.

24. Kennecott did not pay Matrix the balance of its costs under the cost-plus contract nor did Kennecott pay the balance of Matrix's fixed fee; consequently, the total principal unpaid amount owed to Matrix exceeds $4.2 million.

25. Kennecott claims it is entitled to an offset of about $379,500 against the sums it owes to Matrix because Matrix produced defective work; however, prior to terminating Matrix for its own convenience, Kennecott did not notify Matrix, as required by the Contract, that Matrix needed to correct any defective work.

26. Prior to terminating Matrix for its own convenience, Kennecott also did not give Matrix an opportunity to cure any work that Kennecott claimed was defectively performed.

27. The Contract provides in paragraph 58 of the General Conditions that Matrix, as the prevailing party in this action, is entitled to its reasonable attorney's fees and court costs in enforcing the terms of the Contract.

28. Under Utah Code Ann. § 15-1-1, Matrix is entitled to prejudgment interest of 10% on the unpaid sums owed by Kennecott as of April 5, 2013.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

29. Under this cause of action, Matrix incorporates by reference every allegation contained in paragraphs 6–28 of this Complaint.

30. Matrix entered into the Contract with Kennecott to provide labor, services, and materials associated with the Project.

31. Kennecott agreed to pay Matrix for its labor, services, materials, and equipment on a cost reimbursable basis plus a fixed fee.

32. Kennecott terminated the contract for its own convenience.

33. Kennecott breached the Contract when it did not fully compensate Matrix for the costs of its labor, services, materials, and equipment.

34. As a direct and proximate result of Kennecott's breach of contract, Matrix has been damaged in a sum in excess of $4.2 million, together with pre- and post-judgment interest from the date payment by Kennecott was due until paid in full, as well as attorney's fees and costs.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

35. Under this cause of action, Matrix incorporates by reference every allegation contained in paragraphs 6–28 of this Complaint.

36. Matrix, at Kennecott's request, performed construction work and services which have conferred a reasonable value and benefit upon Kennecott.

37. Kennecott had an appreciation or knowledge of the benefit and value Matrix

conferred upon Kennecott.

38. Matrix expected to be paid for the reasonable value of the services it performed for Kennecott.

39. Matrix did not act as a volunteer or intermeddler when it performed its services.

40. It would be inequitable for Kennecott to retain the benefit conferred by Matrix without paying for the value of that benefit.

### THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

41. Under this cause of action, Matrix incorporates by reference every allegation contained in paragraphs 6–28 of this Complaint.

42. Like all contracts, the Contract imposed on Matrix and Kennecott a duty of good faith and fair dealing in their respective performance and enforcement of the Contract.

43. Kennecott breached the implied covenant of good faith and fair dealing through its course of conduct on the Project.

44. As a direct and proximate result of Kennecott's breach of the implied covenant of good faith and fair dealing, Matrix has been damaged in an amount of no less than $4.2 million.

### REQUEST FOR RELIEF

Therefore, Matrix requests the Court enter judgment in its favor and grant the following relief:

1. An award of a principal amount exceeding $4.2 million.

2. An award of prejudgment interest at 10% per annum from April 5, 2013.

3. An award of reasonable attorney's fees and costs.

4. All other relief the Court considers appropriate.

Respectfully submitted this 22nd day of October, 2013.

**BABCOCK SCOTT & BABCOCK**

/s/ Robert F. Babcock
Robert F. Babcock
Joshua J. Sundloff
Attorneys for Matrix Service- Inc.

Plaintiff's Address:

471 West Universal Circle
Sandy, Utah 84070